IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 21-cv-00461-GPG-KLM

RUSSELL STRONG,

     Plaintiff,

v.

CITY AND COUNTY OF DENVER,
ADAM BOLTON, an individual,

     Defendants.

_____

**RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

This matter is before the Court on **Plaintiff's Motion to Strike Defendants' Expert Disclosures** [#61] (the "Motion"). Defendants filed a Response [#78] and Plaintiff filed a Reply [#83]. The Motion [#61] has been referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1) and D.C.COLO.LCivR 72.1. *See Memorandum* [#62]. The Court has reviewed the Motion, the Response, the Reply, the entire case file, and the applicable law, and is sufficiently advised in the premises. For the reasons set forth below, the Court respectfully recommends that the Motion [#61] be **granted in part and denied in part**.

## I. Introduction

By way of background, Plaintiff asserts claims under the First Amendment in connection with speech and assembly, a First Amendment retaliation claim, a claim under the Fourth and Fourteenth Amendments claim for excessive force against Defendants,

-1-

and a municipal liability claim. *See First Am. Compl. and Jury Demand* [#42] ("Complaint"). Plaintiff asserts that Defendants punished him for exercising his rights to free speech and peaceful assembly during the George Floyd protests that swept the nation last year by shooting him in the head with a Kinetic Impact Projectile ("KIP"). *See id.*; *Scheduling Order* [#19] at 3. As a result of this shot, Plaintiff's right eye needed to be removed. *Id.*

On September 8, 2022, Plaintiff timely disclosed two affirmative retained experts: a medical expert, Dr. Prem Subramanian, and a police practices expert, Dr. Edward Maguire. *Motion* [#61] at 2.[1] Plaintiff explains that Dr. Maguire opines that (1) the Denver Police Department ("DPD") provided insufficient and deficient training on crowd management and control; (2) the DPD did not rely sufficiently on the crowd management strategies that are known to be most effective in managing crowds; (3) instead of relying on crowd management strategies, the DPD relied primarily on heavy-handed crowd control practices based primarily on the use of skirmish lines, chemical agents, less-lethal kinetic impact munitions, and flash-bang grenades; and (4) striking Mr. Strong in the eye with a 40mm less-lethal round constituted excessive force. *Id.* (citing Maguire Report [#61-2] ¶¶ 122-124, 129). Defendants assert in response that Dr. Maguire's report addresses a variety of distinct subject matters, including DPD policies, training, strategies, and tactics, as well as an analysis of what occurred during the incident involving Plaintiff,

---

[1] Plaintiff also disclosed 16 non-retained expert witnesses to testify about his injuries. *Id.* at 2 n. 2.

with a specific assessment of the actions of the officer who fired the projectile striking Plaintiff and how DPD caused Plaintiff's injuries.   *Response* [#78] at 2.

Defendants did not disclose any affirmative experts by the September 8, 2022 affirmative expert deadline.   On October 6, 2022, Defendants requested Plaintiff's position on an extension of time to submit Defendants' rebuttal expert disclosures from October 12, 2022, the rebuttal expert disclosure deadline, to October 28, 2022.   *Motion* [#61] at 3 (citing Ex. 3**,** Oct. 6, 2022 Conferral Emails.)   Plaintiff did not oppose the extension of the rebuttal expert disclosure deadline, but notes that Defendants did not seek the Court's approval of that extension.   *Id.*

On October 28, 2022, after the deadline set by the Court but on the deadline agreed to by the parties, Defendants served its expert disclosures.   *Motion* [#61], Ex 4. Defendants disclosed three retained experts: (1) Eric Daigle, a policing expert; (2) Robert Johnson, another policing expert; and (3) Joseph Tremblay, an engineer.   *Id.* Defendants assert that it disclosed these three experts to address the subject matter addressed by Dr. Maguire: Joseph Tremblay to offer an engineering perspective on the incident [#61-5]; Robert Johnson to opine on the actions of the officer [#61-6]; and Eric Daigle for expertise on DPD policy, its consistency with law enforcement standards, and how the actions of the officer met DPD policy and law enforcement standards [#61-7]. *Response* [#78] at 1-2.   Defendants also disclosed, as non-retained experts: (1) "DPD commanders and supervisors who were tasked with oversight of the protests and provided instruction and direction during the course of the protests[;]" and (2) "all

healthcare providers identified in Plaintiff's medical records or identified in disclosures or through discovery in this matter." *See Motion* [#61], Ex. 4.

Plaintiff asserts that Defendants' three retained experts (1) were not timely disclosed, (2) are not properly characterized as rebuttal experts because their opinions are outside the scope of the opinions expressed by Plaintiff's experts, and (3) exceed the limitation of one rebuttal expert for each affirmative expert disclosure set by the Court's Scheduling Order [#19]. *Motion* [#61] at 1-2. Plaintiff also asserts that Defendants' non-retained expert disclosures as to DPD commanders and supervisors do not comply with the requirements of Fed. R. Civ. P. 26(a)(2)(C) because they are blanket disclosures that do not actually identify any particular individual expert or experts. *Id.* at 2.

Defendants assert in response that their retained experts are not untimely affirmative experts, but provide rebuttal to Dr. Maguire's expert report. *See Response* [#78] at 2. Defendants also assert that they have not exceeded the number of allowed experts from the Scheduling Order, because Dr. Maguire's expert report addressed multiple topics and different subject matters which needed to be addressed through distinct defense rebuttal experts. *Id.* Finally, Defendants argue that striking their experts is not an appropriate remedy. *Id.*

## II.   Analysis

### A   Whether Defendants' Retained Experts are Rebuttal Experts

The Court first addresses whether the three retained experts disclosed by Defendants are proper rebuttal experts. As Plaintiff recognizes, there are important distinctions between affirmative experts and rebuttal experts. *Motion* [#61] at 4. "An

affirmative expert serves to establish a party's case-in-chief." *Spring Creek Expl. & Prod. Co., LLC v. Hess Bakken Inv. II, LLC*, No. 14-cv-00134-PAB-KMT, 2016 WL 1597529, at *2 (D. Colo. Apr. 21, 2016). By contrast, rebuttal expert testimony is "intended solely to contradict or rebut evidence on **the same subject matter** identified by an initial expert witness." Fed. R. Civ. P. 26(a)(2)(D)(ii) (emphasis added). "Rebuttal expert reports 'necessitate a showing of facts supporting the opposite conclusion' of those at which the opposing party's experts arrived in their response reports.'" *Id.* (quotation and internal quotation marks omitted). Rebuttal expert reports are thus "not the proper place for presenting new arguments." *Spring Creek Expl.*, 2016 WL 1597529, at *3. In other words, rebuttal experts "'cannot put forth their own theories; they must restrict their testimony to attacking the theories offered by the adversary's experts.'" *Id.* (quotation omitted); *see also Boles v. United States*, No. 1:13cv489, 2015 WL 1508857, at *2 (M..D.N.C. Apr. 1, 2015) ("expert reports that simply address the same general subject matter as a previously-submitted report, but do not directly contradict or rebut the actual contents of that prior report, do not qualify as proper rebuttal or reply reports.").

Additionally, rebuttal evidence must be directed at the same subject matter identified by the affirmative report. *Spring Creek Expl.*, 2016 WL 1597529, at *3. The term "same subject matter" is not defined by Rule 26 or the Advisory Committee Notes. Courts in this District have rejected narrow interpretations of "same subject matter" and have refused to "place an overly restrictive interpretation on th[is] operative phrase, *Carnival v. GEICO Ins. Co.*, No. 15-cv-02581-PAB-MEH, 2016 WL 9735781, at *2 (D. Colo. Sept. 26, 2016); *Armstrong v. I Behavior Inc.*, No. 11-cv-03340-MJW-BNB, 2013

-5-

WL 2419794, at *3 (D. Colo. June 3, 2013); *Spring Creek Expl.*, 2016 WL 1597529, at *3 ("an unreasonably constrained interpretation of 'same subject matter' ... [leads] to questionable results."). "Therefore, Rule 26(a)(2)(C)(ii) requires courts to strike testimony from the record only if 'the testimony is beyond the scope of [the affirmative expert's] conclusions.'" *Carnival*, 2016 WL 9735781, at *2 (quoting *Armstrong*, 2013 WL 2419794, at *4).

### 1.     The Report of Joseph Tremblay

The Court first addresses the report of Joseph Tremblay, P.D., an engineer. Plaintiff argues that Mr. Tremblay's report [#61-5] should be stricken because it is comprised solely of affirmative opinions to support Defendants' theory of the case. *Motion* [#61] at 5.   Mr. Tremblay is an engineer who opines on "the direction in which an officer from the group was pointing a projectile launcher when a less-lethal round contacted Mr. Strong."   *Tremblay Report* [#61-5] at 1.   Mr. Tremblay stated that a review of frames from a video of the incident was conducted utilizing the science of photogrammetry to determine the position of Mr. Strong and the location of the group of police at the time that the projectile was fired.   *Tremblay Report* [#61-5] at 7.   Using the concept of projectile motion analysis, which defines the trajectory of an object as it is launched or fired and travels through the air, Mr. Tremblay determined that the projectile launcher that hit Plaintiff was not pointed directly at him; rather, the projectile launcher was pointed above and to the left of Mr. Strong when it was fired.   *Id.* at 10.   Mr. Strong moved into the line of fire after the projectile was launched.   *Id.*   Comparing this to the report of Dr. Maguire, Dr. Maguire does not render an engineering opinion as to the

trajectory of the bullet, and only opines that Plaintiff was shot in the face by an officer carrying a 40mm launcher.   *Maguire Report* [#61-2] at 41, *see also* 37.   The Court finds that the Tremblay Report [#41-4] is not proper rebuttal because it does not attack or rebut the opinions offered by Dr. Maguire, but introduces its own theory that is beyond the scope of Dr. Maguire's report.   Accordingly, it is recommended that this report be **stricken**.

2.      **The Report of Eric Daigle**

As to the report of Eric Daigle [#61-7], a policing expert, Plaintiff asserts that Mr. Daigle does very little in the way of rebutting or criticizing the specific opinions of Dr. Maguire.   *Motion* [#61] at 6.   In fact, Plaintiff asserts that Mr. Daigle only references Dr. Maguire's opinions to agree with the undisputed factual assertion that "Mr. Strong stood on the grass in Civic Center Park facing the officers and holding his 'peace' sign," ([#61-7] at ¶ 26) and to otherwise agree with points Dr. Maguire conceded in his report.   *Id.* at ¶ 39.   According to Plaintiff, "Mr. Daigle fails to grapple or rebut Dr. Maguire's opinions, and instead renders affirmative opinions in support of Defendants' theory of the case." *Motion* [#61] at 7.   The Court disagrees.

Relevant to the analysis of Mr. Daigle's report, Dr. Maguire's report discussed DPD policies and training materials and opined that that they were outdated, allowed too much flexibility to the officers, and did not reflect the current thinking and psychology as to crowd management and control and less-lethal weapons.   *See generally Maguire Report* [#61-2]   Further, Dr. Maguire opined that even when the training materials had been updated, they were inconsistent with the DPD's own policies.   *See id.* at 8.   Dr. Maguire opined that the foreseeable consequence of DPD's failure to provide adequate training to its

officers was the officers' use of inappropriate tactics on, and violation of the constitutional rights of, Plaintiff and other protestors.   *Id.* at 16.   Dr. Maguire also opined that tactics used by the DPD officers during the incident as well as the "multipronged failure to establish and enforce credible accountability mechanisms" is inconsistent with generally accepted police practices and standards.   *See, e.g., id.* at 28, 34.

The Court finds that Mr. Daigle's opinion discusses the same subject matter as Dr. Maguire's report – applicable DPD policies and training and whether they caused or contributed to the alleged use of excessive force.   *See generally Daigle Report* [#61-7]. Mr. Daigle opines as to that issue that the DPD officers' actions at issue were "established in and supported by [DPD] policy and procedure, as well as law enforcement use of force industry standards and training."   *See id.* at 17 ¶ 37.   Mr. Daigle also opines that "the evidence supports the reasonableness of the DPD's use of force against Mr. Strong following his active aggression towards the officers on the skirmish line."   *Id.*   The Court finds this is proper rebuttal testimony.   While Mr. Daigle's report may be broader than Dr. Maguire's opinions in some respects, it nevertheless relates to the same subject matter and is broadly construed as rebuttal by the Court.   Moreover, Plaintiff does not identify any specific area of Mr. Daigle's report that does not constitute proper rebuttal.   *See Motion* [#61] at 6.

Ultimately, the determination of whether any specific opinions of Mr. Daigle exceed the bounds for rebuttal testimony will need to be determined at trial by District Judge Gordon P. Gallagher based on the scope of Dr. Maguire's opinions.   The Court finds, however, for purposes of the Motion [#61], that the Daigle report contains proper rebuttal

testimony and recommends that Plaintiff's request to strike it is an improper affirmative expert disclosure be **denied**.

### 3.     The Report of Robert Johnson

Finally, as to Mr. Johnson's report, Plaintiff asserts that the report does not attempt to rebut or contradict any of Dr. Maguire's opinions.   *Motion* [#61] at 6.   In fact, Plaintiff notes that Mr. Johnson's report expressly states that he does **not** render any opinions "regarding the crowd control, crowd management or strategies, employed and/or training and/or policies utilized during the protests or the related actions by Officer Bolton or other officers, prior to the actual deployment of a less-lethal 40 mm projectile," which is the subject matter of Dr. Maguire's report.   *Id.* (citing *Johnson Report* [#41-6] at 4). According to Plaintiff, Mr. Johnson's expert opinions instead relate to the human factors related to the use of force, including perception-reaction time, and the distorted perceptions between an officer and a video to evaluate use of force.   *Id.* (citing *id.* at 6-13).   Plaintiff avers that all of these opinions are outside the scope of Dr. Maguire's affirmative opinion.

Defendants contend in response that Mr. Johnson's expert opinions are on the same subject matter as Dr. Maguire's opinions related to his analysis of the alleged actions of the officer who fired the projectile that struck Plaintiff.   *Response* [#78] at 5. Thus, Defendants note that Dr. Maguire offers a specific expert opinion that the officer who fired the projectile which struck Plaintiff used excessive force based on the circumstances facing the officer (Maguire Report [#61-2] at 41-42, ¶¶ 125-129), and assert that Mr. Johnson's expert opinions directly rebut this aspect of Dr. Maguire's expert

report with a specific focus on the decision-making process for individual officers and the time it takes officers to make and implement their decisions.   *Id.* (citing Johnson Report [ECF #61-6] at 1-13.

The Court does not necessarily agree with Defendants' characterization of the Johnson Report described in the above paragraph.   It finds, however, that the Johnson Report [#61-6] pertains to the same subject matter and provides rebuttal opinion to Dr. Maguire's opinion that the use of force was excessive and inconsistent with nationally accepted standards, practices, and training.   *See id.* at 4-6.   Further, while Mr. Johnson opines that watching and evaluating use of force videos can create a distorted perception of what an officer saw and the timeframe the officer had to make and carry out a decision (*Johnson Report [#*61-6] at 13), an area not specifically opined to by Dr. Maguire, Plaintiff concedes that Dr. Maguire's opinion that Defendant Bolton targeted Mr. Strong was supported by the video evidence.   *Motion* [#61] at 5.   Accordingly, Mr. Johnson's opinion as to the videos relates to the same subject matter as Dr. Maguire's opinion and could properly be deemed rebuttal.   The Court finds from the foregoing that the Johnson report contains proper rebuttal testimony, and recommends that Plaintiff's request to strike it as an improper affirmative expert disclosure be **denied**.

However, the Court notes that the Johnson report also contains opinions that appear to go beyond direct rebuttal.   Mr. Johnson evaluated factors not considered by Dr. Maguire in his report; for example, the evaluation of human dynamics/response in critical incidents and perception-reaction time.   *Id.* at 5-13.   Nonetheless, these issues appear to relate, at least loosely, to the subject matter of Dr. Maguire's report and the

-10-

actions of the DPD officers.   The Court finds that the determination of whether these issues exceed the bounds for rebuttal testimony should be determined at trial based on the scope of the affirmative experts' opinions.

**B.     The Untimeliness of the Rebuttal Opinions and the Violation of the Scheduling Order's Limits on Rebuttal Experts**

The Court now turns to Plaintiff's argument that Defendants' retained rebuttal experts were not timely disclosed and that they exceed the numerical limits on experts set by the Court's Scheduling Order.   *Motion* [#61] at 1.   The deadline to disclose rebuttal experts, as extended by the Court, was October 12, 2022.   *See Minute Order* [#54].   The Scheduling Order [#19] adopts the parties' proposal of one rebuttal expert in response to each affirmative expert.   *Id.* at 12.

The Court first addresses the untimeliness of the rebuttal reports.   The Court agrees with Plaintiff that the rebuttal disclosure and reports were untimely as they were filed after the Court's deadline, and that Defendants should have moved the Court to extend the deadline.   Nonetheless, the Court finds Plaintiff's argument that the reports should be stricken on this basis is disingenuous in light of the fact that Plaintiff agreed to an extension of the deadline to October 28, 2022, which deadline Defendants complied with.   Accordingly, the Court declines to strike the rebuttal disclosures on this basis.

A more significant problem is the failure of Defendants to comply with the requirement, proposed by the parties themselves, that each party be limited to one rebuttal report per affirmative expert.   Defendants assert in their Response [#78] that they believed they needed three rebuttal reports to respond to Dr. Maguire's report, which they contend offers expert opinions on multiple different subjects.   *Id.* at 2, 6.

Defendants further assert that they do not believe a single expert, including Dr. Maguire, is qualified to offer expert opinions on all of the distinct topics addressed in his report. *Id.* at 6. As a result, Defendants state they were required to address those same topics with multiple rebuttal experts. *Id.* However, Defendants do not provide any explanation as to why they failed to move to amend the scheduling order as to this issue and failed to obtain the Court's consent as to this issue upon a showing of good cause. See Fed. R. Civ. P. 16(b)(4) ("A schedule may be modified only for good cause and with the judge's consent."). Rule 16(f) provides: "[o]n motion or on its own, the court may issue any just orders . . . if a party or its attorney . . . fails to obey a scheduling or other pretrial order." Fed. R. Civ. P. 16(f).

Further, Rule 26 requires that parties make expert disclosures "at the times and in the sequence that the court orders." "The failure to meet a scheduling order's deadline for disclosing an expert is no trifling matter." *Rehberg v. City of Pueblo*, 281 F.R.D. 620, 623 (D. Colo. 2012). "As numerous courts have noted, a '[s]cheduling [o]rder is not a frivolous piece of paper, idly entered, which can be cavalierly disregarded by counsel without peril.'" *Nosewicz v. Janosko*, No. 16-cv-00447-PAB-KLM, 2019 WL 1402952, at *3 (D. Colo. Mar. 27, 2019) (quoting *Washington v. Arapahoe Cty. Dep't of Soc. Servs.*, 197 F.R.D. 439, 441 (D. Colo. 2000)).

Nonetheless, the Court finds that striking all three retained rebuttal experts is too drastic a sanction, and denies the Motion [#61] as to that request. *See Summers v. Missouri Pac. R.R. Sys.,* 132 F.3d 599, 604 (10th Cir. 1997) ("The decision to exclude evidence is a drastic sanction."). Instead, the Court will grant Plaintiff's alternative

request in the Motion [#61] that Defendant be limited to one rebuttal expert.   *See id.* at 10.   Considering the factors relevant to sanctions, the Court finds that this case is not yet set for trial, and the disclosures thus do not cause any disruption to the trial schedule. *See Woodworker's Supply, Inc. v. Principal Mut. Life Ins. Co.*, 170 F.3d 985, 993 (10th Cir. 1999).   While the Court finds that Plaintiffs were prejudiced by the disclosure of three rebuttal reports in response to Dr. Maguire's report, particularly since discovery has closed, this prejudice can be cured by allowing the deposition of the one rebuttal expert Defendants choose to retain.   *See id.*   Further, the Court finds that Defendants may suffer significant prejudice if they are precluded from offering any rebuttal testimony from a retained expert.   Finally, while Defendants were culpable in choosing to ignore the Scheduling Order [#19], and took a significant risk in doing so, the Court finds no evidence of bad faith or willfulness.   *Id.*

Since the Court recommended in the previous section that Mr. Tremblay's report be stricken as exceeding the scope of rebuttal testimony, that leaves the reports of Mr. Daigle and Mr. Johnson.   The Court recommends that Defendants be limited to using one of these experts, and that they be given a date certain to make that decision known.

## C.   The Non-Retained Experts

Finally, the Court addresses the non-retained rebuttal experts disclosed by Defendants.   Plaintiff asserts that Defendants generically reference broad categories of potential witnesses such as "Denver Police Department (DPD) commanders and supervisors who were tasked with oversight of the protests and provided instruction and direction during the course of the protests," without identifying the specific individuals they

intend to call, let alone what these unidentified individuals can be expected to testify to. *Motion* [#61] at 10 (citing Ex. 4).   Plaintiff avers that the disclosures are so deficient that it is impossible to assess whether these non-retained witnesses are even proper rebuttal witnesses, and that he cannot prepare for trial with respect to purported expert witnesses who are not even identified.   *Id.*   Accordingly, Plaintiff asserts that Defendants' non-retained expert disclosures must be stricken.   *Id.*

Rule 26(a)(2) provides that the identity of each expert witness must be disclosed and, as to experts who do not need to provide a report, the subject matter on which the expert is expected to testify and a summary of the facts and opinions to which the expert is expected to testify.   This requirement is obvious in light of the fact that a party cannot adequately prepare for trial if the other party has not disclosed the identity of its experts or the facts and opinions to which the expert may testify.   Defendants did not comply with this requirement.

Rule 37(c)(1) provides for evidentiary sanctions for expert disclosures in violation of Rule 26(a).   The rule states: "[i]f a party fails to provide information or identify a witness as required by Rule 26(a), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless."   Fed. R. Civ. P. 37(c)(1).   "For purposes of Rule 37(c)(1), a party's failure to disclose is substantially justified where the non-moving party has a reasonable basis in law and fact, and where there exists a genuine dispute concerning compliance."   *Sender v. Mann*, 225 F.R.D. 645, 656 (D. Colo. 2004).   The non-moving party has the burden of showing that it was substantially justified in failing to comply with

Rule 26(a) and that such failure was harmless.  *Id.*  Here, Defendants have failed to show, or even argue, that its failure to identify the specific DPD commanders or supervisors who may provide rebuttal expert testimony and the facts and opinions to which they may testify was substantially justified, and the prejudice to Plaintiffs from this is self-evident.  Further, the Court is not inclined at this juncture of the case to allow Defendants to amend their expert disclosures and reopen discovery as to whatever DPD commanders or supervisors they may choose to identify.  Accordingly, the Court recommends that the Motion [#61] be **granted** as to this category of non-retained experts, and that this category of non-retained experts be stricken.

The Court declines, however, to strike Defendants' disclosure of non-retained experts in the form of "all healthcare providers identified in Plaintiff's medical records or identified in disclosures or through discovery in this matter."  *Motion* [#61], Ex. 4 at 4.  Plaintiff obviously knows who these health providers are and what their opinions are, and fails to show any prejudice from this disclosure.

### III.     Conclusion

Based upon the foregoing,

IT IS HEREBY **RECOMMENDED** that Plaintiff's Motion to Strike Defendants' Expert Disclosures [#61] be **GRANTED IN PART AND DENIED IN PART**.   Specifically,

IT IS **RECOMMENDED** that the Motion [#61] be **GRANTED** as to the following: (1) that the expert report of Joseph Tremblay be **stricken** as it is not a proper rebuttal report; (2) that Defendants be limited to one rebuttal witness out of the remaining two experts designated to opine in response to Dr. Maguire's report, and that Defendants be

given a date certain to affirm which expert they will move forward with; (3) that Plaintiff be given the opportunity to depose which of the two remaining retained experts Defendants choose; and (4) and that non-retained experts in the category of "Denver Police Department (DPD) commanders and supervisors who were tasked with oversight of the protests and provided instruction and direction during the course of the protests" (Defendants' Fed. R. 26(a)(2) Disclosures [#61-4] at 4) be **stricken.**   It is recommended that the Motion [#61] otherwise be **DENIED**.

Dated: July 7, 2023

BY THE COURT:

Kristen L.  Mix
United States Magistrate Judge